IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| R.H. and DAWN RACHELL HENDERSON,[1] | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:24CV00160 |
| MINA CHARTER SCHOOL OF LEE COUNTY, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is Defendants' joint motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Doc. 13.) The court issued Plaintiff Dawn Rachell Henderson a Roseboro[2] letter, notifying her of her right to respond and the possibility that a failure to do so may result in dismissal of the case. (Doc. 17.) Henderson moved for additional time to respond to the motion to dismiss (Doc. 18), and her request was granted. (Text Order dated May 1, 2024.) But she never filed a response, and the time for doing so has expired. For the reasons set forth below, the motion

---

[1] The docket styles the case "R.M.," but Defendants point out and the state court complaint reveals, that the correct initials are "R.H." (Doc. 13 at 1 n.1.) Oddly, Henderson referred to "Plaintiff[s] R.M. and [Henderson]" in one of her filings. (Doc. 18.) "R.H." appears to be correct, and the court will so refer to Plaintiff.

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (per curiam).

to dismiss will be granted.

I.  BACKGROUND

On February 2, 2024, Henderson filed her complaint in the Superior Court of Lee County, North Carolina, against MINA Charter School of Lee County ("the School"), the School's Board of Directors, and two School employees: Ciera Dixon and Dr. Shawn Williams.[3] (Doc. 1-2.) Defendants timely removed the action to this court based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(a) (Doc. 1) and subsequently filed the present motion to dismiss. (Doc. 13.) Henderson was granted an extension until June 7, 2024, to respond to the motion to dismiss, but to date has not done so.

The facts alleged in the complaint, which the court accepts as true for the purpose of the motion to dismiss, show the following:

R.H. is a seven-year-old girl who has been diagnosed with autism, ADD, and anxiety. (Doc. 7 at 1.) Henderson has primary physical custody of R.H. and shares joint legal custody with R.H.'s mother. (Doc. 7 at 22.)

From July 2021 to September 1, 2022, R.H. attended the School.

---

[3] Plaintiffs failed to serve Williams within 90 days after filing the complaint, as required by Federal Rule of Civil Procedure 4(m). Plaintiffs received notice of this failure and were advised that failure to respond within 14 days could result in dismissal of the action without prejudice. (Doc. 19.) Plaintiffs did not respond, and the action was dismissed without prejudice as to Williams. (Doc. 20.)

2

(Doc. 7 at 2.) During that period, Henderson and the School had a series of disagreements about R.H.'s educational program. (Doc. 7 at 2.) After R.H. was left alone in an office in the proximity of an unmonitored exit door, Henderson asked the School to place her in a different classroom. (Doc. 7 at 2.) The School denied this request, but R.H. was eventually placed in a classroom for students with disabilities. (Doc. 7 at 2.)

Henderson learned of a series of altercations involving R.H. and D.M., a classmate. (Doc. 7 at 2-3.) On two occasions, D.M. took R.H.'s crayons from her while she was drawing. (Doc. 7 at 2.) Henderson alleges that R.H. was punished for the incident instead of D.M. (Doc. 7 at 2.) On a separate occasion, Henderson alleges that D.M. took R.H.'s toy boat and it was never returned. (Doc. 7 at 2.) Henderson acknowledged in her complaint that she "was not overly alarmed" by these events. (Doc. 7 at 2.) But she became more alarmed at the beginning of the 2022-2023 academic year when she received reports that D.M. had hit, kicked, and threatened R.H. (Doc. 7 at 3.) After Henderson received these reports, she noticed that R.H. was withdrawn and reluctant to attend school. (Doc. 7 at 3.)

On August 4, 2022, an incident led Henderson to share her concerns with the School's administration. (Doc. 7 at 3.) Henderson dropped R.H. off at the School that morning. (Doc. 7 at 3.) Y'Mecca Graves, the teaching aide for R.H.'s class, picked

3

R.H. up from the front office; Graves was accompanied by D.M. at the time. (Doc. 7 at 3.) When R.H. saw D.M., she began screeching and crying and wanted to return home. (Doc. 7 at 3.) In response to the commotion, Defendant Dixon entered the hallway and approached the group. (Doc. 7 at 3.) Henderson explained to Dixon that R.H. was afraid of D.M., and Dixon responded that the students were "in the same class." Henderson claims this remark amounted to telling R.H. to "deal with it" and alleges that Dixon's behavior was "unprofessional, aggressive and out of line." (Doc. 7 at 3.)

On the following morning, Henderson sent an email to Dixon, Defendant Williams, and another School administrator that "admonished" Dixon and "demand[ed] a full investigation into what was happening" with D.M. and R.H. (Doc. 7 at 3–4, 53–57.) Williams responded within an hour and stated that he would follow up later with a fulsome response. (Doc. 7 at 58.) Dixon did not respond. (Doc. 7 at 3.)

When Henderson went to the School to pick up R.H. that afternoon, Dixon allegedly ranted that Henderson's email jeopardized her job and livelihood. (Doc. 7 at 3.) Despite Henderson's efforts to extend an "olive branch," Dixon treated her with "open hostility" and vowed to keep her at a distance. (Doc. 7 at 3–4.) This incident made Henderson "fearful for her physical safety" when Dixon was present. (Doc. 7 at 4.)

One week later, Williams responded to Henderson's email and

4

requested that the School and Henderson schedule a meeting. (Doc. 7 at 4.) Henderson agreed but requested that Dixon be excluded. (Doc. 7 at 4.) On the day the meeting was scheduled to take place, Williams told Henderson that he could no longer attend and Dixon would attend in his stead. (Doc. 7. at 4.) Henderson, fearing for her safety, attended the meeting remotely. (Doc. 7 at 4.) She claims that the meeting was "pointless." (Doc. 7 at 4.) Henderson also alleges that Dixon continued to be "openly hostile" toward her throughout the meeting and during a subsequent private conversation between the two. (Doc. 7 at 4.) After the meeting, Henderson decided that the "only way to keep [R.H. safe]" was to disenroll her from the School. (Doc. 7 at 4.) But she sent R.H. back to the School the following week to comply with "the compulsory attendance law." (Doc. 7 at 4.)

Soon after R.H. returned to school, Graves asked to speak with Henderson in private. (Doc. 7 at 4-5.) Graves told her that D.M. had been attacking, hitting, and threatening R.H. nearly daily, and the School's administrators directed staff to conceal the incidents. (Doc. 7 at 5.) Henderson informed the School that she was withdrawing R.H. the following day. (Doc. 7 at 5.)

Shortly thereafter, Henderson filed a complaint with the United States Department of Education Office for Civil Rights. (Doc. 7 at 5.) The parties attempted to mediate their dispute, and Henderson claims they agreed to settle the dispute for $12,500.

5

(Doc. 7 at 6.) But no payment was made because the School had inadequate insurance coverage. (Doc. 7 at 6.) This action followed.[4]

**II. ANALYSIS**

Defendants argue, among other things, that the complaint should be dismissed because it fails to comply with Federal Rules of Civil Procedure 10 and 11, which require that pleadings be signed and consist of numbered paragraphs and separated counts. (Doc. 14 at 13.) Henderson has not responded to the motion to dismiss.

This court's local rule provides, "If no response brief is filed within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. L.R. 7.3(k). This rule is strictly enforced, even against pro se parties. See, e.g., Crisp v. Allied Interstate Collection Agency, 149 F. Supp.3d 589, 592 n.4 (M.D.N.C. 2016). Although Henderson has failed to respond, the Fourth Circuit requires the court to review any dispositive motion to determine whether it has merit. Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("Even though [plaintiffs] did not challenge the motions to dismiss, we note that the district court nevertheless has an

---

[4] Henderson does not allege that the School breached any agreement to settle the dispute.

obligation to review the motions to ensure that dismissal is proper.").

Henderson appears pro se. Thus, her complaint "should not be scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects in it, Bustos v. Chamberlain, No. 3:09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp.3d 713, 715-16 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

Here, Defendants' motion to dismiss is meritorious. Defendants point out multiple deficiencies in the complaint, including its non-compliance with the Federal Rules of Civil Procedure. The complaint does not "state its claims . . . in numbered paragraphs," nor does it state "each claim . . . in a separate count," which violates Rule 10. Fed. R. Civ. P. 10(b). It is also unsigned and lacks the information required by Rule 11. Fed. R. Civ. P. 11(a) (requiring that "[e]very pleading, written

7

motion, and other paper must be signed . . . by a party personally if the party is unrepresented" and "state the signer's address, e-mail address, and telephone number"). Rule 11 provides that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Id. (emphasis added). Defendants called these defects to Henderson's attention in their motion to dismiss, but Henderson did not endeavor to correct them. Although Henderson is a non-lawyer, she must still abide by the legal standards, rules of procedure, and deadlines applicable to all litigants. See Dewitt v. Hutchins, 309 F. Supp. 2d 743, 749 (M.D.N.C. 2004) ("[P]ro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." (quoting Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994))). These include, as noted above, Rule 11 of the Federal Rules of Civil Procedure, which requires parties to sign their pleadings.

Consequently, Defendants' motion to dismiss warrants dismissal of the action without prejudice at this stage. See Fed. R. Civ. P. 41(b).

Given Henderson's pro se status, the court would be remiss not to point out several additional deficiencies in the complaint should she contemplate re-filing the action.[5] First, Henderson,

---

[5] By noting these deficiencies, the court does not intend the list to be exhaustive.

as a non-lawyer, may not bring claims on behalf of her granddaughter proceeding pro se. See Myers v. Loudoun County Pub. Schs., 418 F.3d 395, 401 (4th Cir. 2005) ("[N]on-attorney parents generally may not litigate the claims of their minor children in federal court."). Myers's bar aims to prevent "well-meaning, but legally untrained" individuals from inadvertently prejudicing the legal rights of minor children. Id. Second, the complaint references the Individuals with Disabilities in Education Act ("IDEA"); as Defendant point out, any purported claims predicated on violations of the IDEA must be exhausted. E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ., 773 F.3d 509, 513–14 (4th Cir. 2014) (stating that "a plaintiff must exhaust her administrative remedies" before bringing an IDEA action in federal court). The current complaint does not reference any efforts by Plaintiffs to exhaust North Carolina's available administrative remedies. Third, Henderson references statutes that do not contain private rights of action. For example, the complaint references the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and the North Carolina School Violence Prevention Act ("NCSVPA"), N.C. Gen. Stat §§ 115C-407.15 to -407-16. Those statutes do not provide for a private right of action for individuals. See Gonzaga Univ. v. Doe, 536 U.S. 273, 276, 287 (2002) (FERPA); Benjamin v. Sparks, 173 F. Supp. 3d 272, 291 (E.D.N.C. 2016), aff'd, 986 F.3d 332 (4th Cir. 2021) (NCSVPA);

L.C. ex rel. Dunbar v. Charter Schs. USA at Cary, LLC, No. 5:24-Cv-66, 2024 WL 3470835, at *4 (E.D.N.C. July 19, 2024) (NCSVPA). Finally, as Defendants note, the complaint does not specify which claims are asserted on behalf of R.H. and which are individually asserted by Plaintiff Henderson. (Doc. 14 at 2.) Nor does it clarify which claims are asserted against which Defendants. See Fed. R. Civ. P. 8 and 10(b).

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 13) is GRANTED, and the complaint is DISMISSED WITHOUT PREJUDICE.

                                                  /s/   Thomas D. Schroeder
                                                United States District Judge

October 24, 2024